IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

_____

| | | |
|---|---|---|
| ERIC WAYNE BEEBE, | ) | Cause No. CV 07-76-H-DWM-RKS |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| MIKE MAHONEY; ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| MONTANA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

On November 21, 2007, Petitioner Eric Beebe filed this action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The Court has jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254. Petitioner is a state prisoner proceeding pro se.

**I. Preliminary Screening**

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Id. If summary dismissal is not warranted, the judge must order the respondent to file an answer,

motion, or other response or "to take other action the judge may order." Id.

## II. Background

Petitioner challenges the revocation of his parole. He was released on parole on March 20, 2001. On November 30, 2006, his probation officer, Katie Donath, submitted a Report of Violation. The Report alleged that Petitioner failed, on several occasions, to obtain permission to change his residence ("Violation No. 1") and permission to change his employment ("Violation No. 2"). It also alleged that he failed to comply with state and local laws ("Violation No. 3"), as evidenced by his failure to submit fingerprints and photos for the Violent Offender Registry and to keep his address current on the Registry, by various misdemeanor traffic or registration violations in Broadwater County, and by several occasions of driving without a license. Finally, the Report stated that the Gallatin County Sheriff's Office suspected Petitioner of stealing tools from an employer and had referred its investigation to the County Attorney for prosecution. See Pet. (doc. 1 #6) Exs. A-D.

On December 5, 2006, a probable cause hearing was held. Petitioner, Donath, and a hearings officer, Steve Ette, were present. Petitioner admitted that he was cited for misdemeanor offenses in Broadwater County, drove on several occasions without a license, and was cited for contempt in Broadwater County. Ette found probable cause to support Violation No. 1 based in part on the statement of another of Petitioner's parole officers, Brent Rudolph, that he was not aware of Petitioner's address. Ette also found probable cause to support Violation No. 3, failure to comply with state and local laws, relying in part on the Gallatin County Sheriff's investigation as described by Donath at the hearing. Ette did not find probable cause to sustain Violation No. 2. Ette recommended that parole be revoked without loss of good time and ordered that Petitioner should

be transported to Montana State Prison for a hearing before the Board of Pardons and Parole ("the Board"). See Pet. Exs. F-G.

On January 30, 2007, the Board revoked Petitioner's parole based on its finding that he committed Violation No. 3. Petitioner was scheduled for a progress review in January 2008.[1] The Board based its decision on the nature of Petitioner's violations, the fact that he had committed multiple offenses, and his poor history under supervision. See Pet. Ex. H.

No charges have been filed in Gallatin County based on the alleged theft from an employer.

Petitioner filed a petition for writ of habeas corpus in the Montana Supreme Court. It was denied on July 11, 2007. See Pet. Ex. 3.[2] Petitioner then filed a second habeas petition in the Montana Supreme Court, along with a motion requesting issuance of a subpoena so that he could obtain the tape recording of his revocation hearing. The motion and the petition were both denied on October 17, 2007. See Pet. Ex. 4.[3]

Petitioner timely filed his federal habeas petition in this Court on November 21, 2007. See 28 U.S.C. § 2244(d)(1)(D); Redd v. McGrath, 343 F.3d 1077 (9th Cir. 2003).

**III. Petitioner's Allegations**

Petitioner alleges that his right to due process was violated:

1. when Donath included his juvenile record in the Report of Violation, see Pet. (doc. 1) at 3 (also alleging violation of constitutional right to privacy);

2. when Ette relied on Rudolph's reported statement without giving Petitioner an

---

[1] Petitioner was later indicted on federal charges. See Indictment (doc. 1), United States v. Beebe, No. CR 07-42-BU-DWM (D. Mont. filed Nov. 15, 2007).

[2] Beebe v. Mahoney, No. OP 07-313 (Mont. July 11, 2007).

[3] Beebe v. Mahoney, No. OP 07-544 (Mont. Oct. 17, 2007).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

opportunity to rebut the report, id. at 4;

3. when Ette found probable cause based on failure to report address changes when the Report of Violation listed no such infraction, id. at 4-5;

4. when Donath stated in the section of the Report titled "Adjustment to Supervision" that Petitioner was a "wanderer" who failed to register as a violent offender, failed to report, and generally did whatever he wanted, id. at 5-6;

5. when Donath, an officer in Gallatin County, filed a Report of Violation based on Petitioner's 2001 Missoula County conviction for driving without a valid driver's license, id. at 6 (alleging Donath's lack of "authority or Jurisdiction to override another Parole Officer's decisions");

6. when the Board relied on "multiple offenses" to revoke parole despite its finding that Petitioner committed only one violation, id. at 6-7;

7. when Petitioner was accused of theft by the Gallatin County Sheriff's Office but was not given an opportunity to defend himself, id. at 7;

8. when Ette produced evidence in contradiction to his role as hearings officer by relying on Rudolph's reported statement, id. at 8;

9. when Ette found that Donath had no "jurisdiction" over the alleged employment violation but relied on a 2001 Missoula County conviction to find probable cause in a hearing held in Gallatin County, id. at 8-9 (alleging "prejudice, unfairness, and contradictory judgments");

10. when his parole was revoked based on a 2001 conviction for driving without a license, id. at 9;

11. when he was not given an opportunity to show why imprisonment was not appropriate, id.

### IV. Analysis

#### A. Legal Basis of Petitioner's Claims

Although Petitioner occasionally describes the legal basis of his claims as something other than "due process," due process is the only legal basis for them. "Production of hearsay evidence,"

for example, is unlawful only to the extent that it violates due process.  See, e.g., Pointer v. Texas, 380 U.S. 400, 405 (1965) (applying Sixth Amendment's Confrontation Clause to the States as a necessary component of due process within the meaning of the Fourteenth Amendment).  Moreover, "prejudice" is not a free-standing claim for relief but something that must be shown in order to prove a due process violation.  See, e.g., Brecht v. Abrahamson, 507 U.S. 619, 623, 638 (1993); Bains v. Cambra, 204 F.3d 964, 977-78 (9th Cir. 2000).  Consequently, due process alone provides the legal framework for consideration of Petitioner's claims.[4]

### B. Standards Applicable to Habeas Petitions

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner may obtain relief if the state court's denial of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the state court's denial was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

A state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [its] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from our precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court's decision is an "unreasonable application" of federal law

---

[4] While there is a shadowy federal constitutional right to privacy, see, e.g., Griswold v. Connecticut, 381 U.S. 479, 484 (1965) (describing explicit constitutional guarantees as creating "zones of privacy" in their "penumbras"), neither it nor any explicit federal constitution provision has been extended to protect juvenile criminal records.

"if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. In sum, a federal court sitting in habeas must be convinced that the state court's decision is "more than incorrect or erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003). The state court's decision must be "objectively unreasonable." Id.

### C. Clearly Established Federal Law

The scope of a parolee's due process rights at a revocation hearing are considerably narrower than those appropriate to a criminal trial. Due process is generally[5] provided in State parole revocation proceedings by a two-stage hearing process. First, there must be a "minimal inquiry . . . . at or reasonably near the place of the alleged parole violation or arrest . . . as promptly as convenient after arrest." Morrissey v. Brewer, 408 U.S. 471, 485 (1972). This preliminary hearing is designed to determine whether there is probable cause to believe that the parolee violated the conditions of his parole. See id. at 485. It must be conducted "by someone such as a parole officer other than the one who has made the report of parole violations." Id. at 486. The parolee must be advised of what violations are alleged and of the time and date of the hearing, and he must be given an opportunity to appear, speak on his own behalf, and present evidence. See id. at 487. "On request of the parolee, [a] person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence." Id.[6] The hearings officer must

---

[5] An exception is made when a parolee or probationer is convicted of a crime, see, e.g., Moody v. Daggett, 429 U.S. 78, 86 n.7 (1979), or when, for example, he is arrested in a place he is not entitled to be, see, e.g., Chilembwe v. Wyrick, 574 F.2d 985, 987 (8th Cir. 1978) (per curiam) (citing Stidham v. Wyrick, 567 F.2d 836 (8th Cir. 1977)); Barton v. Malley, 626 F.2d 151, 159 (10th Cir. 1980).

[6] An opportunity to cross-examine is not required if "an informant would be subjected to a risk of harm if his identity were disclosed." Morrissey, 408 U.S. at 487. That is not a factor in Petitioner's case.

summarize the hearing, "state the reasons for his determination and indicate the evidence he relied on." Id. at 487.

Second, there must be a hearing before the authority that makes a final decision both as to whether the parolee violation the conditions of his release and as to whether imprisonment or release is an appropriate sanction. The "minimum requirements of due process" at this second hearing include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrissey, 408 U.S. at 489.

Finally, there must be "some evidence" in the record to support a decision to revoke parole.[7] See Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994). The 'some evidence' standard is "minimally stringent." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). A decision will be upheld if there is "*any* evidence in the record that *could* support the conclusion reached." Id. (citing Superintendent v. Hill, 472 U.S. 445, 455-56 (1985)) (emphasis in Cato). This standard is designed to provide the maximum possible flexibility to the state administrative authority and to honor the state authority's discretion. See Hill, 472 U.S. at 456.

---

[7] It is possible that application of the "some evidence" standard in parole revocation proceedings is not "clearly established Federal law, as determined by the Supreme Court of the United States," as required by 28 U.S.C. § 2254(d)(1). Assuming that it is imposes an additional due process requirement on the State and so does not prejudice Petitioner. For the sake of argument, the Court will assume that the Board's decision had to be supported by "some evidence."

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

### D. Application

#### 1. Report of Violation

The Report of Violation advised Petitioner of the specific violations alleged against him, as it was required to do. See Morrissey, 408 U.S. at 487. Rudolph was even listed as a witness in support. See Pet. Ex. D.

Petitioner has no federal right to preserve the confidentiality of his juvenile record from parole officers or the Parole Board. Claim 1 should be denied.

Donath's statements in the "Adjustment to Supervision" section of the Report of Violation are clearly statements of her opinion. Not only is the hearings officer entitled to know her opinion, but the Report of Violation does Petitioner a service by telling him of that opinion in advance so that he may attempt to rebut it at the hearing. Claim 4 should be denied.

Finally, Petitioner has no right to preclude a probation officer in one county from setting forth his criminal history or his supervision history in other jurisdictions. Again, not only is the hearings officer entitled to know that Petitioner was convicted of driving without a license in 2001, but Petitioner's best interests are served by knowing in advance of the hearing that the probable cause determination may rely on that conviction, so that he may ask the hearings officer to consider any infirmity in it or to find it irrelevant. Claim 5 should be denied.

#### 2. Probable Cause Hearing

The probable cause hearing was conducted by an officer other than the one who submitted the Report of Violation. See Morrissey, 408 U.S. at 486. Petitioner attended the hearing. There is

no indication that he was not permitted to present evidence.[8]  See id. at 487.  Nothing in his voluminous submissions suggests that he requested and was denied the presence of any adverse witness.  Id.  Ette summarized the hearing, "state[d] the reasons for his determination and indicate[d] the evidence he relied on."  Id. at 487; see also Pet. Ex. F-G.

Petitioner knew that Rudolph was a potential witness.  See Pet. Ex. D.  Therefore, Ette did not violate "clearly established Federal law" by speaking with Rudolph before the hearing and predicating his findings in part on Rudolph's statements.  Petitioner says Rudolph knew where he was because he saw Rudolph write down his address in his file when Petitioner told him what it was.  See Pet'r Aff. (doc. 1 #1) at 4, ¶ 17.  Of course, that would not show that Petitioner obtained permission from Rudolph *before* changing his address.  It would not rebut the alleged violation, and it refutes the possibility that Petitioner was prejudiced by Ette's course of action.  Claim 2 should be denied.

Morrissey does not prohibit the hearings officer from speaking *ex parte* with a witness who is named in the Report of Violation – especially the parolee's own previous probation officer.  Morrissey says that the hearings officer who determines probable cause must not be the same officer who is responsible for the parolee's supervision.  Ette was not the officer who prepared the Report of Violation.  Claim 8 should be denied.

As Petitioner says, the Report of Violation did not accuse him of "failing to report address changes."  It alleged that he violated a condition requiring that he obtain permission *before* changing

---

[8] He says that he was cut off while attempting to read law cases to the officers.  At least in the context of this case, legal authority could not have been a relevant fact to show that Petitioner did or did not commit the violations alleged.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

his address. As evidence of violation, it stated that, in June 2006, Petitioner gave his address as 300 9th Street, #4, in Belgrade, Montana. On October 19, 2006, Petitioner reported his "address" as "the Budget Inn" and also stated that he "did not have an address, but he was staying with friends at 1304½ Hayes." Pet. Ex. B. That is sufficient to support probable cause to believe that Petitioner moved without first obtaining permission from his parole officer and "failed to keep his Parole Officer current on his whereabouts" at all times between early June and late October. Claim 3 should be denied.

Petitioner complains that Ette knew he had been accused of theft by the Gallatin County Sheriff's Office but did not give him an opportunity to defend himself. Petitioner had a hearing. Ette found probable cause "based on the information presented by Officer Donath." This meets the requirements of Morrissey. That no formal charges were filed is not relevant to Ette's finding of probable cause. Claim 7 should be denied.

Neither Ette's findings nor his summary refers to Donath's "jurisdiction." That Ette did not find Violation No. 2 to be supported by probable cause has no bearing on his finding of probable cause on Violation Nos. 1 or 3. Claim 9 should be denied.

### 3. Revocation Hearing

Petitioner misstates the basis for the Board's revocation. The Board's form uses the word "offenses" to refer to criminal convictions underlying a parolee's incarceration in the first place, not instances of violation of his conditions of release. See Pet. Ex. H (listing both "nature of violation(s)" and "nature or severity of offense(s)" as reasons for Board's decision). Petitioner has committed "multiple offenses." See Pet. Ex. A; CON Network, http://app.mt.gov/conweb. Claim

6 should be denied.

The Board did not base its conclusion solely on Petitioner's 2001 conviction and had no obligation to revoke his parole only on a showing that he was convicted of something. Petitioner admitted that he drove without a license on more than one occasion even after he had been convicted for doing so in Missoula County. He received multiple citations in Broadwater County and a contempt citation.[9] That is failure to comply with state and local laws, regardless of whether a formal conviction was obtained or not. There was "some evidence" to support the Board's decision. Claim 10 should be denied.

Petitioner had an opportunity at the hearing to say why he should not be returned to prison. "The hearings officer then said she was revoking me and asked what my punishment should be." Pet'r Aff. at 5, ¶ 24. Claim 11 should be denied.

### 4. Conclusion

The Montana Supreme Court did not err at all, much less err in an objectively unreasonable manner. Although Petitioner requests production of the audio tapes of his hearings, the result would not change even assuming the tapes say what he claims. Morrissey simply does not set the high standards that Petitioner would prefer. Both parole officers and the Board have extremely broad discretion in the management of the parole system, and the courts are not tribunals for the relitigation

---

[9] Petitioner says:
   In March 2005 I was arrested for contempt of court charges for failure to pay my initial charges, which driving on a suspended [license], speeding and no insurance. I have also plead guilty to driving without a license prior to that. I have paid around $1,500 in fines and have done about 5 days in jail. I reported all of these infractions to my P.O.'s Brent Rudolph and Jack Harrington, both of which told me they would not violate me for those charges.
Pet. Ex. 1 at 3. It is not clear what this document is, but Petitioner's statements of fact are clear. There is no federal double jeopardy protection against a parolee being subjected to different decisions on admitted violations.

of parole decisions. None of the matters of which Petitioner complains violated the clearly established requirements of Morrissey. The petition should be denied on the merits.

## V. Certificate of Appealability

### A. Governing Law

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability ['COA'] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." See Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000). The standard of a "substantial showing" can be satisfied on an issue-by-issue basis. Lambright, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner ... "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

Lozada v. Deeds, 498 U.S. 430, 432 (1991) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). See also Slack v. McDaniel, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."). Any doubt as to whether a petitioner has met the standard is resolved in his favor. Lambright, 220 F.3d at 1025. The Court must "state why a certificate should not issue." Fed. R. App. P. 22(b)(1) (emphasis added).

### B. Discussion

Petitioner has not made a substantial showing that a specific decision or procedure violated one of the minimal due process requirements set forth in Morrissey v. Brewer, 408 U.S. 471 (1972), or that he was prejudiced as a result. He admitted that he drove without a license and committed

other violations for which he was cited, that he was cited for contempt for failure to pay fines associated with these violations, and that all this occurred even after he had been convicted in Missoula County for driving without a license.  That was sufficient to establish that he committed Violation No. 3.  He had an opportunity to show that some punishment other than imprisonment was appropriate, see Pet'r Aff. at 5, ¶ 24, and revocation of his parole was well within the Board's discretion.  Petitioner overestimates what Morrissey requires.  There is no reason to encourage further proceedings in this case.  A COA should be denied.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1. The Petition (doc. 1) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

<u>Petitioner must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of this case without notice to him.

DATED this <u>6th</u> day of August, 2008.

                                        /s/ Keith Strong
                                        Keith Strong
                                        United States Magistrate Judge